UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-126-H

TRANSAMERICA ASSURANCE CORPORATION                              PLAINTIFF

V.

UNITED STATES OF AMERICA,
SETTLEMENT CAPITAL CORPORATION and                              DEFENDANTS
GARY STEELE

**MEMORANDUM OPINION**

This is an interpleader action filed by TransAmerica Assurance Corporation ("TAC") the issuer of an annuity contract, the payment of which is in dispute. Discovery is now complete and the parties have filed motions for summary judgment. The interesting issue presented here is whether the doctrine of sovereign immunity precludes a state court from exercising jurisdiction over a case involving a settlement agreement entered into by the United States.

The Court has thoroughly discussed the issues with counsel at a conference. The Court concludes that the doctrine of sovereign immunity voids the state court order that required the United States to take a specific action transferring rights to annuity payments to a third party, Settlement Capital Corporation ("SCC"). To accomplish its objectives, SCC must file an independent action in federal court.

I.

In 1989, Gary Steele ("Steele") was injured in an auto accident with a Virginia National Guard tractor. Steele filed a tort claim against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. ("FTCA"). In 1991, the United States and Steele entered

into a settlement agreement ("Settlement Agreement").

As part of the terms of the Settlement Agreement, the United States agreed to purchase an annuity (the "Annuity") for Steele's benefit, the Annuity being "owned solely and exclusively by the UNITED STATES . . . ." By the terms of the Settlement Agreement, all settlement funds were to be "free from anticipation, assignment, pledge, or obligations of the claimants' heirs, executors, administrators, successors or assigns, and shall not be subject to attachment, execution or other legal process."

Pursuant to the Settlement Agreement's terms, the United States entered into a contract with TAC to purchase an annuity for Steele's benefit. In the annuity contract, the United States is the owner of the Annuity, TAC is its issuer, and Steele is the measuring life and the designated payee. Pursuant to the annuity, the United States "has the right at any time to designate to whom annuity payments will be made." Accordingly, the United States made provision for Steele to receive periodic payments over the course of his life.

SCC is a finance company that purchases rights to structured settlement payments throughout the country. In 2003, Steele, agreed to assign his right to future annuity payments to SCC. In exchange, SCC was to pay Steele $18,250.00 in a lump-sum payment.[1]

The State of Florida requires judicial approval of such a procedure. On January 6, 2004, SCC filed a petition in a state court in the Eleventh Judicial Circuit Court of Miami-Dade County, Florida pursuant to the Florida Structured Settlement Transfer Act. In that state action, SCC sought judicial approval to transfer the rights of Steele's payments under the Annuity.

As required under the Florida statute, SCC sent notice to the United States and TCA,

---

[1] The payments outstanding under the Annuity totaled $37,453.32.

2

both of whom were "interested parties" within the meaning of the Florida Structured Settlement Transfer Act.  See Fla. Stat. Ann. § 626.99296(2)(i).  The Florida state court approved the transfer at a hearing on February 3, 2004.  Neither TCA nor the United States appeared at the hearing nor voiced any objections at that time.  In its order, the Florida court stated that the transfer of structured settlement payment rights from Steele to SCC "is in the best interests of [Mr. Steele] and satisfies the Internal Revenue Code Section 5891 and does not contravene any Federal or State statute . . . ."  The court further noted that it "makes no finding regarding the enforceability of any non-assignment provisions contained in the original Settlement Agreement or related documents."  Nevertheless, the court approved the transfer and ordered that "pursuant to the approval of the Transfer, Structured Settlement Obligor [the United States] is hereby ordered to direct Annuity Issuer [TAC] to make and pay the assigned monthly payments . . . to [SCC]."

On February 5, 2004, the United States sent a letter to the Florida court indicating that the payments were not assignable and that the Florida court lacked jurisdiction to affect a federal contract right of the United States.  The United States also stated in the letter that it was not a party to the Florida court proceeding, would not make an appearance in the Florida court proceeding, and would not subject itself to the jurisdiction of the Florida court.

After the Florida court approved the transfer, SCC sought payment from TAC under the Annuity.  The United States ordered TAC to continue paying Steele unless otherwise directed by the United States.  TAC filed this interpleader action asking the Court to direct and declare to whom the periodic payments at issue should be paid.

II.

3

The sole question raised here is whether TAC must comply with the Florida state court order. The answer depends in turn on whether the state court properly asserted subject matter jurisdiction over the matter. *See Twin City Fire Insurance Co. v. Adkins*, 400 F.3d 293, 299 (6th Cir. 2005) ("Where a federal court finds that a state-court decision was rendered in the absence of subject matter jurisdiction or tainted by due process violations, it may declare the state court's judgment void *ab initio* and refuse to give the decision effect in the federal proceeding.") (citations omitted). The United States argues that the Florida state court lacked subject matter jurisdiction because its proceedings were barred by the doctrine of sovereign immunity.

Sovereign immunity is jurisdictional in nature. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 259 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). A suit is against the sovereign if "'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal citations omitted) (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947) and *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704 (1949). The policy behind this rule is that the government should not be hampered in its performance of activities essential to the governing of the nation, unless it has given its consent. *See Larson*, 337 U.S. at 704; *see also Commissioners of the State Ins. Fund v. United States*, 72 F. Supp. 549, 552 (D.C.N.Y. 1947) (sovereign immunity grounded on the doctrine that "The King can do no wrong.").

In this case, by the time the state court judgment was entered, the United States had

4

already paid the entire purchase price for the Annuity. Therefore, the state court judgment did not "expend itself on the public treasury or domain." However, the Florida state court order does implicate other aspects of the doctrine of sovereign immunity. Allowing the Florida court to assert jurisdiction over the Settlement Agreement interferes with the government's administration of its settlement agreement. Although the Florida court did not profess to interpret the terms of the Settlement Agreement, its judgment effectively modified the United States government's rights and obligations under both the Settlement Agreement and the Annuity. This affected rights of the United States in a real way.

The United States is the sole and exclusive owner of the Annuity. The language of the Annuity clearly states that no assignment of the contract may be made other than by the United States as owner and that the only person entitled to payment is Steele. This payment structure is consistent with an express congressional policy that generally prohibits assignments of contracts with the United States. See 31 U.S.C. § 3727.[2] Moreover, in cases like this one, the United States has a unique interest in prohibiting the transfer of long-term FTCA settlement payments. By providing a stable stream of income to persons injured by government negligence, the United States may reduce the likelihood that an injured party will recover twice for the same injury: once in the form of an FTCA settlement; and again in the form of a government-benefits

---

[2] Section 3727, the Anti-Assignment Act, restricts the voluntary assignment of claims against the government, including the right to future payments in a settlement agreement. The Act is intended to prevent traffic in government claims, which would breed corruption and influence-peddling, and to avoid the proliferation of claims and claimants, which would increase the government's risks and burdens in the handling and payment of claims, *Saint John Marine Co. v. United States*, 92 F.3d 39, 48 (2d Cir. 1996), as well as to make unnecessary the investigation of assignments, and preserve the government defenses which the government might have by way of set-off and counterclaim and which might not be available against an assignee. *Stearns Co., Ltd. v. United States*, 34 Fed. Cl. 264 (1995). The Act, however, does not affect the rights of parties to an assignment. *Arthur Pew Constr. Co. v. Lipscomb*, 965 F.2d 1559, 1576 (11th Cir. 1992). "Whether or not an assignment is valid as against the United States, it is effective and binding on the parties." *Id.*

program, such as Social Security or Medicaid. By ordering the assignment, and effectively nullifying contractual language prohibiting assignment, the Florida court interfered with the public administration of a contract executed and owned by the United States.[3]

More importantly, the operative language of the Florida state court judgment compelled the United States government to act. The Florida court order proclaimed that the "Structured Settlement Obligor [the United States] is hereby ordered to direct Annuity Issuer [TAC] to make monthly payments . . . to [SCC]." Consequently, the order did require direct and affirmative action on the part of the United States.

The Court finds this case distinguishable from *Gao v. Jenifer*, 185 F.3d 548 (6th Cir. 1999), in which the Sixth Circuit found that the compulsory effect of a state court judgment was too indirect to qualify as a suit against the United States. In *Gao*, a minor entered the country illegally, and was placed in the custody of a social services agency. The agency successfully petitioned the local probate court to find that Gao was "dependent" and that it would not be in his best interests to return to his native country. Based on that determination, he then requested that the INS classify him in "Special Immigrant Juvenile" (SIJ) status. The INS denied the petition on the basis that the state court did not have the power to declare Gao dependent and, absent that determination, he did not qualify for SIJ status. It argued that the United States' sovereign immunity barred the state court from asserting jurisdiction over the petition because

---

[3] As the parties point out, there is a split of authority as to the assignability of structured settlement agreements between private parties with language similar to that employed in this case. *Compare Allstate Ins. Co. v. American Bankers Ins. Co.*, 882 F.2d 856, 859-60 (4th Cir. 1989) (assignment of annuitant's right to receive monthly payments unenforceable) *with Settlement Funding, LLC v. Jamestown Life Ins. Co.*, 78 F. Supp. 2d 1349, 1356 (N.D. Ga. 1999) (assignment of structured settlement payments, funded by an annuity, enforceable). However, no reported case has held that a structured settlement agreement can be assigned pursuant to a state court order when the settlement was executed by the United States government.

the judgment prevented the government from deporting him. The Sixth Circuit disagreed. It held that the state court's action in granting the status at issue did not, under the terms of the statute, determine what would happen to Gao; it merely gave him the right to seek the benefits at issue. *Id.* at 554. Thus, the court held that the state court proceeding was not a suit against the United States. *Id.* at 554-55. Here, however, the state court judgment automatically imposes obligations on the United States. The United States has no choice but to file a written notice with TAC seeking to designate SCC as the Annuity's payee.

Notwithstanding the above analysis, SCC argues that the doctrine of sovereign immunity is inapposite because the state court proceedings in this case were akin to *in rem* proceedings. The Supreme Court has held that certain *in rem* proceedings do not qualify as suits against the government and therefore do not trigger sovereign immunity protection. *See, e.g.*, *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 453 (2004) ("Our [Eleventh Amendment] precedent has drawn a distinction between *in rem* and *in personam* jurisdiction, even when the underlying proceedings are, for the most part, identical."). But as far as this Court is aware, there is no general "*in rem*" exception to the doctrine of sovereign immunity. Rather, the Supreme Court has excepted only two very specific types of *in rem* proceedings from sovereign immunity analysis: bankruptcy proceedings, *see, id.* at 453-54; and admiralty cases, *see, e.g.*, *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 494-95 (1998) (stating that sovereign immunity does not prevent federal courts from hearing admiralty case brought *in rem* where res is not within the state's possession). Therefore, despite the fact that the Florida state court action arguably resembled an *in rem* action, absent further guidance, this Court holds that the litigation qualifies as a suit against the United States.

Because the state court proceeding qualifies as a suit against the United States, the state court's jurisdiction depends on whether the United States has waived its immunity with respect to the particular proceeding. *See Blue Fox, Inc.*, 525 U.S. at 259. Only an unequivocal and express act of Congress can act to waive sovereign immunity. *See Lane v. Pena*, 518 U.S. 187, 192 (1996). Here, no congressional act expressly authorizes a state court to exercise jurisdiction over a petition to transfer payment rights under a structured settlement agreement executed and owned by the United States. Congressional enactment of favorable tax treatment for structured settlement transferees, see 28 U.S.C. § 5891, does not constitute its waiver of sovereign immunity in this context; and therefore, the Florida state court lacked jurisdiction to transfer Steele's interests. In these circumstances, even though the United States received notice of the lawsuit, it had no obligation to appear and object to SCC's request. This is so because the absence of subject matter jurisdiction voids the entire proceeding and all orders arising from it. The judgment transferring Steele's payment rights is null and void. *See Twin City Fire Insurance Co.*, 400 F.3d at 299.

One might suggest that the logical extension of this analysis is that Steele can never gain approval for the transfer of structured settlement payments under Florida law. The Court does not believe that this is so. The federal government is not categorically immune from petitions to transfer structured FTCA settlements. The United States has waived sovereign immunity over federal contract claims and tort actions against it; however, those waivers expressly dictate that only a court established pursuant to Article III of the United States Constitution may exercise jurisdiction over those matters. See 28 U.S.C. § 1346(a)(2) (conferring exclusive jurisdiction on federal courts of "any civil action or claim against the United States founded upon any express or

8

implied contract with the United States"); see also 28 U.S.C. § 1346(b) (the federal district courts "shall have exclusive jurisdiction of civil actions against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment"). Accordingly, the proper forum for SCC's current petition is a federal court–not the Eleventh Judicial Circuit Court of Miami-Dade County, Florida. Also, it would appear that it is appropriate to file a petition pursuant to the Florida Structured Settlement Transfer Act in federal court. The federal court can certainly interpret and follow Florida law. Moreover, the Florida statute permits any court of "competent jurisdiction" to authorize the transfer "based on the written express findings" that the statute requires. Fla. Stat. Am. § 626.99296(3)(a).

Therefore, TAC must pay the interpleaded funds and future payments under the Annuity to the person entitled to receive them before that judgment was entered: Steele.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record